CASE 12—PETITION ORDINARY—DECEMBER 22.

# Kent's Adm'r v. Deposit Bank of Owensboro.

APPEAL FROM DAVEISS CIRCUIT COURT.

1. DESCENT AND DISTRIBUTION—RIGHT OF HUSBAND TO WIFE'S BANK STOCK.—Bank stock held by a married woman as her separate estate passes upon her death to those who would take her real estate as heirs-at-law, and not to her husband, the husband not being her

Kent's Adm'r v. Deposit Bank of Owensboro.

" heir" within the meaning of section 15, article 4, chapter 52, General Statutes.

2. DIVIDENDS DECLARED UPON SUCH STOCK AFTER THE DEATH OF THE WIFE PASS WITH THE STOCK TO THE HEIRS. And even if the husband, as administrator, could recover a dividend declared during the life of the wife, he must aver in his petition that it was so declared, as, in the absence of such an averment, the court will presume that the dividend was declared after her death.

3. THE PERSONAL PROPERTY OF THE WIFE, ALTHOUGH HELD BY HER AS HER SEPARATE ESTATE, PASSES UPON HER DEATH TO THE HUSBAND, unless a statute or the instrument creating the estate directs that it . shall pass to others.

4. A PLEADING is to be most strongly construed against the pleader.

W. N. & J. J. SWEENEY FOR APPELLANT.

1. Whatever may be the distributive rights of the parties, the husband had the right to maintain this action as administrator.

2. Section 15, article 4, chapter 52, General Statutes, excludes the husband only during coverture. (Brown, &c., v. Alden, &c., 14 B. M., 141.)

3. The husband, by the express provision of the statute of distribution, is the wife's heir as to her personalty, and, therefore, takes the stock in controversy under the provision of the statute that, upon the wife's death, it "shall pass to her heirs." (Gibbon v. Gibbon, 40 Ga., 562-575; Tyson, &c., v. Posthelwaite, 13 Ill.; Rawson v. Rawson, 52 Ill., 62; 14 Ohio, 140; Douglas v. Rembart, 5 Kan., 392; Mace v. Cushman, 45 Me., 250.)

4. The statute was not intended to supersede the separate estate recognized in equity, or to deprive parties of the right to create whatever estate they pleased known to the law. The statutory separate estate is one with the equitable separate estate in this case. But if not, then the estate in this bank stock is, by the terms of its creation, equitable separate estate. (Pepper v. Lee, 53 Ala., 33 ; Short v. Battle, 52 Ala., 456.)

WEIR, WEIR & WALKER FOR APPELLEE.

1. The general statute as to the distribution of the personal estate of the wife does not apply to bank stock held by the wife, as in the present case, because another statute provides a specific distribution of it at her death, which excludes the survivor. (Gen. Stats., chap. 52, art. 4, sec. 15.)

2. The purpose of the statute was not to create a separate estate in the wife as to the stock and the dividends thereon, as a statute was not necessary for that purpose (Bank of. Louisville v. Gray, &c., 84 Ky., 571), but to direct its succession, so as to exclude all rights in the husband at her death.

A husband may be, and is under our statute, a distributee, but can not be an heir of his wife.    (Williamson v. Williamson, 18 B. M., 367.)

3. The dividend is an incident to the stock and retains its character as separate estate.  (Young v. Smith, 9 Bush, 421.)

4. The owner of the stock at time the dividend is declared is entitled to the dividend.  (Morse on Banks and Banking, 515 and 134; 2 Perry on Trusts, secs. 545, note 1, p. 587.)

Therefore, any dividend declared on the stock after the wife's death passed to her heirs, and in no event can her administrator recover any dividend without an averment that it was declared prior to her death.  (Harris v. Campbell, 4 Dan., 587; Miller v. Rice, 1 Bush, 70.)

The earnings which were declared as a dividend may have been made after the death of the wife, and that they were in the present case will be conclusively presumed in the absence of an allegation in the petition that they were made prior to her death.  (Williams v. Rogers, 14 Bush, 780; Commonwealth v. Cook, 8 Bush, 224; Covington v. Powell, 2 Met., 230.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

Belle W. Kent died childless and intestate. She owned five thousand dollars of bank stock. It was her separate estate. The husband, W. P. Kent, became her administrator, and after demand and refusal of payment he brought this action to recover a dividend that had been declared upon the stock. Her heirs-at-law made themselves parties to the suit, and disputed his claim to it. This dispute involves the right to the stock as between the husband and the heirs-at-law of the deceased wife. The charter of the bank makes its stock personalty.

Section 15, article 4, chapter 52, of the General Statutes, provides: "If any stock in any of the banks or other corporations of this State is taken or transferred to any female, and it is expressed on the face of the certificate or transfer-book of such stock that it is for the use of such female, no husband of hers shall take

any interest in such stock or the dividends thereon; and at her death it shall pass to her heirs; but if unmarried, she may dispose of it by will; or, if married, so dispose of it with the consent of her husband, or without such consent if so provided in the deed or will creating the trust. She may receive the dividends, and give acquittances therefor, though married; but she shall not, in any way, anticipate the same; nor shall any dividend be paid upon an order or power given by her before the same is declared."

It is urged, with ingenuity and ability, that this statute does not change the succession to a deceased wife's separate estate in bank stock from the course her separate estate in other personalty takes upon her death, where the instrument creating it has not directed to whom it shall pass, or she has not disposed of it. The right of a wife to a separate estate is of comparatively modern origin. By the common law the existence of the wife for most legal purposes, and especially as to personal property, became merged in that of the husband. Her title to it, however absolute, vested in him, if the thing was in possession; and if in action at her death, it passed to him as her administrator, or as survivor. The separate estate of a *feme covert* in it is a creature of equity. It does not *ipso facto* exclude the rights of the husband except during coverture; and in case of its non-disposal by her, or his exclusion as to it after her death by the terms of its creation, his right as to it upon her death is the same as if it had not been separate estate. In other words, the right of the husband is suspended during coverture by the existence of the separate es-

tate; but if he survives the wife, it attaches to the property just as if there had been no separate estate, unless she has in some way disposed of it, or unless, by the terms of its creation, he is excluded from all interest in it after her death. The mere creation of a separate estate in personalty in her without any manifest intention to exclude his right from attaching at her death will not prevent it from springing up when that event takes place. If her interest in the personalty endures beyond her death, the right of the husband attaches to it just as if there had been no separate estate, provided it has not been otherwise disposed of by her in the exercise of a power, or by the terms of the creation of the separate estate. (Brown, &c., v. Alden, &c., 14 B. M., 114.) This is the general rule, and it is said that the statutory provision cited above was only intended to impress upon bank stock held by the wife for her separate use the character of separate estate pending the coverture; that it merely suspends the marital rights of the husband while that relation exists, and does not terminate them. If, however, this be so, why was the statute enacted? What need was there of it? The existing equitable rule accomplished all this; it recognized and enforced the right of the wife to hold and use bank stock as separate estate, and there was no necessity for the statute, unless the Legislature intended to change this rule as to the separate estate of the wife in bank and corporation stocks, and exclude the husband's right to them as her administrator or as survivor. He could have been so excluded by the terms of creation of the separate estate; but

the Legislature saw proper to say that this should result, although not so provided by the instrument or terms of creation, whenever the subject of the separate estate is bank or corporation stocks. Let us see if both the language of the statute and the previous legislation upon the subject are confirmatory of this view. The Legislature, on February 16, 1838, enacted a statute, which provided as follows:

"§ 1. That it shall be lawful for any person who may desire to make an annual provision for a resident female friend, relative or connection, in such manner that the provision will be for the exclusive use of the female, and not transferable, nor liable to vest in the husband, nor be subject to his debts, to transfer, or cause to be transferred, to such female, stock in any of the banks or other corporations created by this Commonwealth, and have it expressed on the face of the certificate of stock, and on the transfer-book of the bank or corporation that such stock is for the exclusive use of such female, and as annual provision for her support. And no such stock shall be transferable during the life of the female, nor liable to the debts contracted by her, nor shall it vest in her husband, nor be liable to his debts, nor shall he be entitled to it as her administrator, but·it shall pass to the same persons who would take her real estate as heirs-at-law: *Provided*, That if she be a *feme sole*, she may dispose of it by last will and testament, and if a *feme covert*, may devise it with the consent of her husband.

"§ 2. That the dividends, from time to time, as declared, shall be paid over to the female, and shall

not be paid on any power of attorney executed before the same is declared, nor in which there is not express authority to draw the same; and the receipt of the female, whether married or sole, shall be an acquittance for the dividend; and she shall also, whether married or sole, have authority to execute a power of attorney to draw the same; and *feme coverts* shall have the right to take such stock without the consent of their husbands."

This law remained in force until the adoption of our Revised Statutes in 1852, chapter 47, article 4, and section 16 of which reads thus:

"If any stock in any of the banks or other corporations of this State is taken for or transferred to any female, and it is expressed on the face of the certificate or transfer-book of such stock that it is for the exclusive use of such female for her annual support, no husband she then has, or may thereafter have, shall take any interest in such stock or the dividends thereon; and the same, at her death, shall pass to her heirs; but if unmarried, she may dispose of it by will, or, if married, so dispose of it with the consent of her husband, or without such consent if so provided in the deed or will creating the trust. She may also receive the dividends, and give acquittances therefor, though married; but she shall not in any way anticipate the same; nor shall any dividend be paid upon an order or power given by her before the same is declared."

This provision continued in force until the adoption of our present statute in 1873, which, so far as it bears upon the question now under consideration, is

in substance the same as the law of 1838 and that of 1852. That of 1838 vested the stock in the wife for her exclusive use, and provided: *"Nor shall he* (the husband) *be entitled to it as her administrator, but it shall pass to the same persons who would take her real estate as heirs-at-law."*

Undoubtedly, under this statute no right upon the part of the husband sprang up, Phœnix-like, at the death of the wife, investing him either as her administrator or as survivor with title to the property. The language was condensed in the revision of the statute in 1852, and made to read: *"And the same at her death shall pass to her heirs,"* while in the present statute it is: "And at her death it shall pass to her heirs."

In our opinion there is no material difference between these provisions, nor was any intended. The history of the legislation, as well as the language of the present law, show that the Legislature intended to keep in force the law of 1838, and to change the equitable rule as to separate estate in this species of property, so that the husband would not take it upon the death of the wife. The statute uses the term "heirs." Technically this means those upon whom the law casts the inheritance, and while the statute may make those heirs who otherwise would not be so, because the law-making power regulates the descent of property, yet the husband as to the wife's property is a distributee, and, generally speaking, not an heir; and the previous legislation defining "heirs" as those "who would take her real estate" shows that it was not intended to embrace him by the use

of the word "heirs" in our present statute. Our law
provides: "A husband shall have the whole surplus
of a deceased wife's personal estate." (General Stat-
utes, chapter 31, section 11.) This, however, is a stat-
ute relating generally to the distribution of the wife's
personal estate in case of intestacy, she having the
power under our law to will her separate estate, or
to make a will in the exercise of a written power;
but it is not applicable where an exception as to any
particular kind of property has been made by special
statute. As to bank stock, for instance, held by her
as separate estate, another statute has specially di-
rected how it shall pass upon her dying intestate, and
it excludes the husband as survivor. If it had been
merely declaratory of the existing law, or if it had
been intended to embrace him, it doubtless would
have said, in express terms, that if the *feme* died
intestate, leaving a husband, he should take the stock,
or else have said nothing as to how it should pass,
thus leaving it to pass to him under the general law.

The cases of Payne v. Payne, 11 B. M., 138; Allen
v. Everett, 12 B. M., 375, and Brown v. Alden, *supra*,
where it was held that the husband, either as ad-
ministrator or survivor, was entitled to the separate
personal estate of the wife upon her death, were de-
termined upon the equitable rule to which we have
referred, and not upon any special statute applicable
to a particular character of property, save in the last
named case, where a slave, some furniture, notes and
money were involved, it was held that by virtue of
a special existing statute the husband had only an
estate for life in the slave, whereas, before the pas-

sage of the act his interest became absolute upon the death of the wife. As in that case a special statute controlled the succession to the wife's slave, so here it does to her bank stock, it having been shown upon the face of the certificate that it was her separate estate.

Even if the husband as administrator could recover a dividend declared during the life of the wife upon this stock, yet he must aver in his petition that it was so declared. This he has not done. It does not appear in any way when the dividend sued for was declared. Certainly dividends declared since her death, being but incidents of the stock, pass with it to the heir.

The pleading is to be most strongly construed against the pleader, and in the absence of an averment that the dividend was declared during the life of the wife, we must presume it was declared after her death.

Judgment affirmed.