Moses, Executor, *v.* McLeod, Commissioner of Revenues.

4-7400                                                                 180 S. W. 2d 110

Opinion delivered May 8, 1944.

*Eugene R. Warren,* for appellant.

*O. T. Ward* and *Virgil Ramsey,* for appellee.

McHANEY, J.   This is a controversy between appellants, as executors of the estate of the late Harvey C. Couch, and appellee, Commissioner of Revenues for the state of Arkansas, as to the correct amount of the estate tax due the state under the provisions of the "Estate Tax Law," same being Act 136 of 1941.   Mr. Couch died subsequent to the effective date of said act.   Appellants contend that they have paid to appellee all the estate tax due to the state, which appellee admits, if appellants' construction of said act is correct.   On the other hand appellee contends that there is still due and unpaid on account of said estate a balance in the sum of $2,559.80, which appellants admit is correct, if appellee's construction of said act is correct.

This action was brought by appellants to enjoin appellee from enforcing said additional tax.   Trial resulted in a decree dismissing appellants' complaint for want of equity and they have appealed.

The principal controversy arises under the provisions of § 3 of said act, but subsections (h) and (i) of § 2, the definatory section, have some bearing on the question and are as follows: "(h) The term 'gross estate' means the gross estate as determined under the provisions of the applicable federal revenue act; (i) The term 'net estate' means the net estate as determined under the provisions of the applicable federal revenue act, except where otherwise defined."

Section 3 provides: "A tax is hereby imposed as follows upon the transfer of the net estate of every person dying after the effective date of this Act who at the time of death was a resident of this state; the net estate shall be the value of the estate at the date of death after deducting from the gross estate funeral expenses, trustee's fees, attorney's fees, administration expenses, claims against the estate, unpaid mortgages, or any in-

debtedness in respect to property, the value of which is included in the gross estate, to the extent that such expenses, claims, mortgages, or indebtedness were incurred or contracted *bona fide* and for an adequate and full consideration in money and money's worth; but net estates which after the deductions allowed hereunder do not exceed ten thousand dollars, shall not be taxable. Four-fifths of one per centum of the amount of the net estate in excess of ten thousand dollars but not in excess of one hundred thousand dollars, and on the amount of the net estate which exceeds one hundred thousand dollars, a tax on the amount which shall be a sum equal to the amount by which the credit allowable under the applicable federal revenue act for estate, inheritance, legacy and succession taxes actually paid to the several states shall exceed the aggregate amount of all constitutionally valid estate, inheritance, legacy and succession taxes actually paid to the several states of the United States (other than the state of Arkansas) in respect to any property owned by such decedent, or subject to such taxes as a part of or in connection with his estate.''

It will be observed that this section provides that ''the net estate shall be the value of the estate at the date of death after deducting from the gross estate'' the various items set out in said section. If the net estate as defined is of the value of $10,000 or less, no tax shall be collected. If the net estate as defined is in excess of $10,000, a tax of four-fifths of one per centum is levied on such excess up to and including $100,000, or 4/5 of 1% of $90,000 which is $720. There is no dispute between the parties up to this point. Mr. Couch's net estate amounted to more than $100,000, and their dispute arises over the amount of the tax due on the amount of the net estate in excess of $100,000. Under the applicable federal revenue act the net value of said estate was somewhat less than the net value fixed by the state, because of a decline in value of an asset of the estate after decedent's death, and within one year therefrom, and the election of the executors to value the gross estate ''as of the date one year after decedent's death,'' as given them

under the provisions of § 811 (j), Title 26, U.S.C.A., p. 20, instead of the value at date of death.

Appellants contend that the amount of estate tax due the state of Arkansas is 4/5 of 1% of $100,000 minus $10,000, which is 4/5 of 1% of $90,000, or $720, plus the federal credit as computed by the applicable federal revenue act, which amount has all been paid. Appellee contends that the tax due Arkansas on the amount of the net estate in excess of $100,000 is equal to 80% of an amount computed by applying the federal rates to the valuation of the net estate under said Act 136, that is, as of the date of death of Mr. Couch.

It will be observed in reading § 3 of said act, above quoted, that it fixes no rates of taxation on values in excess of $100,000. The last clause in said section, beginning with the words "and on the amount of the net estate which exceeds one hundred thousand dollars" is somewhat involved, but when analyzed is quite simple. Under the applicable federal revenue law, § 813 (b) U.S.C.A., Title 26, p. 150, the amount, not exceeding 80% of the basic federal estate tax, actually paid to the various states, territories or the District of Columbia for death taxes, is allowed as a credit against said basic estate tax. In this case no death tax of any other state is involved. Arkansas is entitled to all the federal credit, which is 80% of the basic federal estate tax. The basic federal estate tax on this estate is obtained by applying the federal rates to the net value of the estate, as determined by the Commissioner of Internal Revenue, as of one year after the date of decedent's death. Arkansas is not concerned with the amount of the net value of the estate in excess of $100,000, because it levies no rate of taxation on such excess, but levies only a tax thereon equal to the amount of the federal credit—no more, no less. The language used in the concluding sentence in § 3 can mean nothing else. Stripped of unnecessary verbiage, or deleting words tending to confound its meaning, it reads: "and on the amount of the net estate which exceeds one hundred thousand dollars, a tax—which shall be a sum equal to the amount by which the credit allow-

able under the applicable federal revenue act for estate
—taxes actually paid to the several states shall exceed
the aggregate amount of all—estate taxes actually paid
to the several states—(other than—Arkansas)—."
There being no estate taxes to other states, the tax due
to Arkansas is the amount of the "credit allowable." If
there were death taxes due and payable to other states,
the amount of the Arkansas tax would be the difference
between the "credit allowable" and the amount so paid
to other states. Stated in the language of Commerce
Clearing House, State Tax Guide Service, § 32-651, rela-
tive to Act 136 of 1941, "If the net estate exceeds
$100,000, the tax on the excess is 80% of the basic fed-
eral estate tax less death taxes paid other states."

In this opinion we have assumed the constitutional-
ity of this provision of said act, and we have also given
due consideration to departmental construction and
practice from the passage of said act to the present time,
which is that appellee, in determining the amount of the
tax due this state on net estates in excess of $100,000,
applies the federal rates to the amount of the net estate
determined as of the date of death and takes 80% of
that amount as the "credit allowable." But the act does
not contain any such provision. It simply levies a tax
on such excess which, in this case, is the "credit allow-
able." Appellee is demanding and attempting to collect
a sum in excess of the "credit allowable," which he may
not do under the plain provisions of said act, but even if
there were any doubt about the proper construction of
the act, it would be the duty of the courts to resolve such
doubt in favor of the taxpayer.

The trial court, therefore, erred in dismissing the
complaint, and the decree is reversed and the cause re-
manded with directions to grant the injunction as prayed.